May it please the Court. Your Honors, the case in this appeal involves this panel's de novo review of the District Court's disposition of competing summary judgments. And the ruling below we submit proceeds from one fundamental error. And it begins at the outset of the opinion. The District Court classifies the obligation that the appellee seeks to enforce as a commission. It is not a commission. It is not described as such in the contract that it sought to be enforced. And the District Court's factual characterization of it as a commission leads to a multitude of errors that we ask this Court to correct. Now, the obligation that the appellee seeks to enforce is clearly and unequivocally described in the USAF contract as revenue sharing. It is part of the purchase price paid in that transaction which occurred in 2006, whereby USAF, now Fidelity, sold certain assets to a company called Greystone. And Greystone agreed to pay for those assets in a combination of ways which included this revenue sharing. It is most explicitly not a commission. It is not a referral fee. Before we get to that question, you agree that Exhibit H to that agreement was included, and not only that, but also included the four accounts that are, whether we call them commissions or whatever, they were included on Exhibit H. I do, Your Honor. And I would concede that they are included in Exhibit H. And that leads to another complaint that we have lodged with what the District Court's analysis did, because the District Court did not touch on the underlying litigation that preceded the USAF, Fidelity, and Republic dispute, because that listing was alleged to have been a misrepresentation and an error in a prior lawsuit that was resolved in the Northern District of Texas. And the essence of that lawsuit, as asserted by Republic, was that Greystone, the seller in that transaction, had misrepresented these four accounts and the obligations consistent with those accounts as a referral fee obligation. And that, Your Honor, I think is sort of the touchstone for a point that I was going to get to a little bit later, which is the District Court's analysis started there and worked backwards, whereas it should have started at the front. It should have started at the contract that the party who was coming to court seeking to enforce the contract, but what that contract described and what obligation was sought to be enforced in that contract. And the District Court's analysis started there and went backwards, instead of starting at the USAF contract and then working forwards. And so that — What's your authority that you have standing to contest not only that, but also the anti-assignment clause? I don't believe, Your Honor, that we have any authority to contest the contract between USAF and Greystone. In fact, that's a fundamental essence. It's like an estoppel type argument? Yes. That's a fundamental essence of our argument, which is that the way the District Court proceeded and analyzed the issue is that it ends up enforcing a contract, holding us liable for the contract when we are not a part of that contract, we are not in privity of that contract, and that contract cannot be assigned. And to that point, that brings up a very salient point, which is that the District Court simply refused to address the fact that USAF-slash-Fidelity sued its contracting party, Greystone. The only two parties to that contract were involved in a lawsuit. In that lawsuit, USAF said you have breached the contract we have by assigning it. The contract says you can't assign it. You assign it. You owe us damages. That case was resolved by settlement. By operation of that settlement, I submit, Your Honors, that that extinguishes Greystone's contractual obligations. Pretermitting whether or not there was an assignment or an assumption or a future act, you cannot undo the fact that Greystone, as the alleged assigned or whatever you want to characterize them as, they no longer have a contractual obligation under the USAF contract. There is nothing left to enforce when that happens. And we touched on these concepts in our brief. I do want to mention two related topics under Texas law, which is the One Satisfaction Rule and the Election of Remedies Rule. And this, I think, Your Honor, goes to the point you just mentioned about Estoppel. At the point in time in 2013, when USAF learned that its contract with Greystone had been breached, USAF chose to sue Greystone, alleging that Greystone had breached the contract and that it was entitled to damages. They filed a separate claim against Republic, saying that Republic had tortiously interfered with that contract. That was dismissed by the district court once the underlying case was settled. But that's an important factual point, which the district court never addresses in its seven-page opinion. It does not address what effect USAF's election of its remedy, with full knowledge of all the facts, and saying we're not going to enforce this contract against the assignee or the alleged assignee. We're going to enforce it against the party that owes the obligation. They did that. They settled it, and they received compensation. All of these facts were before the district court. The district court did not address them. That is also important for the principle of the one-satisfaction rule, which is under Texas law and the cases that we've cited in our brief, which is the Leonard v. Hare decision and the Slay v. Burnett trust, that a plaintiff, once they get satisfaction for their damages, cannot then go and sue others for those same damages. Here, USAF, Fidelity, has sued for breach of contract. They have alleged that they were damaged by that breach of contract. They have recovered a satisfaction through settlement of those damages. Texas law says you can't then sue somebody else for those same damages. The — And that's notwithstanding the Section 1.3 language regarding the assumption? Yes, Your Honor, that is correct. Putting aside the issue of an assumption, the election to sue Greystone and the settlement and the recovery of the money, the election of remedies and the one-satisfaction rule apply regardless of what happens seven years later through an assignment or an assumption or whatever. And I think that brings me back to a fundamental problem with the district court's analysis. The district court, in its analysis, analyzed the Greystone-Republic contract. It didn't analyze the contract that was sued upon. That is the USAF contract. We've cited to the language that contract is clear. You do not need to go beyond that contract to come to the conclusion that the obligation that USAF, not Greystone, the obligation that USAF seeks to enforce against Republic is a payment price obligation. It is not a referral fee. It is not a commission. And that's important because it would be one thing if Greystone assigned its rights against Republic to USAF. There is no such assignment. This is USAF saying we have a contract that we can enforce against Republic. And there is no privity between the two, which speaks back to your point, Your Honor, which is we don't have standing to raise those issues. And as we pointed out in our reply, I'm sure if I could find some obligation in the USAF contract that was owed from USAF to Greystone and I tried to enforce it, I would be met with the defense of you're not in privity and there's an anti-assignment clause. So you can't come into this bilateral agreement and seek to enforce obligations or receive benefits. And that's the essence, I think, of our position and what we think is an erroneous analysis by the district court. And I think the district court focused not on the USAF contract, which was sued upon, but upon the Republic-Greystone contract, which doesn't happen until seven years later. The brief of the appellee seeks to keep the panel's attention on that contract. Was your client benefiting from these four accounts? My understanding is that there was some type of income stream or — Yes. We can see there is a benefit because it is an asset. As they looked at it, it was an asset from Greystone that they purchased. They had no clue when they purchased it, and that was the essence of the underlying lawsuit and misrepresentation, that there was this indefinite income stream assignment. And had we known — had that been fully disclosed, then the purchase would have been adjusted and changed. And that goes, I think, to a very important point, which is while I conceded earlier in my argument, Your Honor, that it was listed in Exhibit H, there is no contract, and that's a very important point because all of the other accounts listed in H have a contract, what's known as a referral fee agreement. That agreement is a bilateral agreement, which continues to produce positive effects for the purchaser. So I was going to save this point for rebuttal, but my question for fidelity is what benefit, what continuing benefit, what referrals are you making for the benefit of Republic? The answer, Your Honors, is none. This is the classic money-for-nothing scheme. There is no benefit. There's no obligation that USAF is giving to Republic. And I think that goes back to the proper definition of what the obligation is. It's a payment price obligation because USAF sold the asset, they said free and clear it's yours, Greystone, and Greystone said I will pay for it in this way, and those parties agreed to that. Now, if Greystone, if at the point in time when Greystone breached the contract and assigned these income streams, then at best USAF's argument was for its portion, its allocable portion of the proceeds that Greystone received for these assets, Your Honor, and I think that addresses your point, hopefully. Now, the other point which I'd like to make, which is that the diversion that the appellee needs to make is critical because the appellee does not want you to focus on the very contract that it sued on because that contract, there is no privity with Republic and so the claim fails. There's an anti-assignment clause that says Greystone cannot assign it. And then most importantly, there is the concept under Texas law and I think most jurisdictions that even under an assignment scenario, the assignor is not released from the liability under the contract. So if there was an assignment seven years later of this contractual obligation, both the assignor and the assignee remain bound to the original obligee. And so when you settle with the assignor, you release the assignee and that goes to the settlement issue which the district court never addressed in its opinion. Although I don't believe it's necessary, there is an additional sort of legal error which we raised in our brief which is the myopic focus of the district court on just one portion. They just focused on Exhibit H. It did not focus on the entirety of the Republic-Greystone contract. We cited to the court the New Star decision which reversed a summary judgment grant saying you can't just – it was a similar situation where you had conflicting terms within a large document. You can't just look at one term and not construe the other terms. And if that happens, if there are conflicting terms and you have to go to the intent of the parties and the record evidence, at least at the summary judgment stage here, was that there was no intent to assume this indefinite purchase price obligation. And then finally, Your Honors, we have asked because we think the record is clear that as respects Republic's motion for summary judgment which was based on two premises. One, that the claim by fidelity that they have contractual rights against Republic should be dismissed for lack of privity. There is no evidence of an express assumption of Greystone's payment price obligation in the record. None was submitted in opposition to the summary judgment. And therefore, summary judgment is proper dismissing USAF's contract claim against Republic. Relatedly, the alternative claim asserted in the court below was that USAF was a third-party beneficiary. The record is replete with disavowals by USAF of any third-party beneficiary status, and the Republic-Greystone contract contains an express bar of any third-party beneficiary status. Thank you, Your Honors. Unless there are any questions. Roberts. Thank you, Mr. Bellart. You save time for rebuttal. Mr. Nabel. I've probably mispronounced that, and you can correct me. No, you're one of the first people who have connected or pronounced it correctly on the first try. I appreciate it. Yes, sir. I'm Robert Canamo. I represent Fidelity in this appeal. The district court properly focused upon the contract between Republic and Greystone. Now, I'll get to that a little bit more in a minute, but if you focus on what Pellitt's counsel has argued to this court is, that there was an assumed obligation to pay the — well, first of all, Fidelity or Republic received the accounts, the Fidelity accounts plus some other ones, and agreed to pay a 20 percent commission to assume that obligation to pay them. What Republic wants in this appeal is either the ability to terminate that agreement because it's indefinite or because they didn't assume it specifically, but the economic benefit, the deal that was cut between Republic and Fidelity — or Republic and Greystone was that Greystone would sell these accounts. Republic would pay a purchase price plus these commissions. So Mr. Ballard's main point, I think, because he mentioned it about ten times, is privity. Correct. And so would you address it in terms specifically of — Well, there was no privity between Fidelity and Republic, and that's what the district court determined and noted in their opinion. But it's clear under Texas law if there is an express assumption of an obligation by the non-party to the contract, that third party, non-party could be held liable for a breach of the contract. And that's exactly what happened in this one. It's very specific. If you go back and look at the purchase agreement between Republic and Greystone, it's 1.13, where it mentions Exhibit H. There's an express assumption where Republic assumes the obligations that are set forth in Exhibit H. And part of Exhibit H is the four Fidelity accounts where there's an agreement to pay those 20%. There's an express assumption. So when the court and the district court also correctly, in their analysis, looked at the fact that when the court, and you're going to also do it, DeNova, when you interpret a contract, you're trying to ascertain the intent of the parties. And if it's clear, then you can ascertain that. And in this case, the intent was clear. It's like I said earlier. The deal was Republic would buy accounts, pay Greystone a certain amount, and assume obligations. And that's exactly what happened with this thing. So if you follow Republic's or determine they're correct in their interpretation, Republic gets the accounts, receives the fees, but pays no obligation, pays no 20% obligation. That wasn't the party's original transaction. And it is clear from what the terms of the contract were as to the intent of the parties and what it would be. So Fidelity now believes it can look to both, correct, for satisfaction? It can look to both Greystone as well as Republic? Initially, yes, Your Honor. Okay. Now, assuming that there was the other lawsuit in the Northern District of Texas, I understand there was a $68,500 payment? Yes, Your Honor. Okay. And that, according to the briefing, was allotted to attorney's fees? Yes, Your Honor. Okay. And what was the actual attorney's fee? Is that the figure? I think it was similar. We weren't involved in it at that point. Okay. All right. But I believe that it was close. And that's an actual dollar figure based on submitted documentation? Yes. But the key to that is, too, now, in page 10 and footnote 10 of Pollen's reply brief, they incorrectly state that the Fidelity Greystone contract didn't allow for attorney's fees, that, you know, that somehow this should not be allocated because you couldn't recover them, because that's just incorrect. And I'll walk you through. But whether it does or it doesn't, who made the decision to allocate any type of settlement money one way or the other, and why would that decision preclude any benefit to Republic at this time? Well, obviously, the parties, Greystone and Fidelity, would have made that decision where to allocate the fees. And the reason Fidelity would benefit from that is because the case law in Texas is that when you have multiple causes of action or sort of several elements of damages, a party can choose or to their degree which element of damages are going to be sold or allocated to them. So you agree that what you're arguing, as I understand it, is Republic is benefiting from a payment by Greystone? Right. Yes. Yes. All right. And I want to point out again that the argument in the reply brief that the contract doesn't provide for the awarding attorneys is just incorrect. There's a definitional section of the agreement that defines losses and includes several things. You have a page or paragraph? Yes, Your Honor. It's in the record. It's 841. It's page 6. Sorry about it. In the contract, is there a page and paragraph of the contract? It's page 6, Your Honor. Okay. And it's in the definitional section of losses. Okay. Which it says losses means several things including reasonable attorneys' fees, accountants, et cetera. Then page 17 of the Greystone Fidelity Agreement under paragraph or section 7 of the classification. It says 852 in the record. 7B provides that if there's a loss that Greystone indemnifies against losses that fidelity incurs for several reasons including a breach of contract. So, I mean, you walk through that process. So we could. I mean, so there was a suit for breach of contract. There was an allocation of attorneys' fees to settle that suit. And there is not really a credit that should be given in this case because there was a benefit to the public with that settlement. Now, the issue as to which contract to focus on, the district court correctly focused on the agreement between Greystone and Republic. And I think I've alluded to this a little bit. It really didn't matter what the Exhibit H obligations were called. But the fundamental bargain between the parties was those obligations identified, and they were clearly identified, would be assumed and paid by Republic. And that's the exact obligation that they're trying to avoid at this point. Could you address Pell and Council's opening point that we're not talking about a commissioner, we're talking about deferred compensation? Well, three points on that. It really doesn't, in my opinion, it doesn't matter what it's called in the Greystone-Republic contract. And the district court noted this, that part of the consideration, I'll go back up a little bit, part of the consideration in the Greystone-Fidelity transaction was this payment of this 20 fees. Now, the district court correctly reasoned that you can't just characterize it for your own benefit and say, well, okay, that's something that's not covered by this agreement. Because between the Republic on the Republic agreement and the Greystone agreement, Republic made the express assumption to pay those, regardless of what they were. And keep in mind also what Republic's getting in exchange. They're getting these accounts, which up to the point of where the summary judgment is filed, they had received over $500-something thousand worth of fees on the Fidelity accounts and had assumed to pay 20%. You know, the Republic wants it both ways. They want the fees from the transaction, they want to keep the transaction. They talk about it being an indefinite term, which I'll address in a little while, that can be terminated. But they don't want to terminate that part of the contract. They don't want to stop getting those fees. But to get back to your point, Your Honor, there was just an express assumption of this. And if you look at also 1.12 of the Greystone-Republic contract, asset purchase agreement, Republic's argument always seems to exclude liability with respect to that part. But the revenue streams, et cetera, that are excluded in there, don't relate to the transaction with Republic of Fidelity in Greystone, but they relate to Republic in Greystone. For example, there is excluded liabilities for the payment of broker's fees. There's revenue streams, et cetera, tied to that agreement. So, for example, the parties are excluding liabilities for if there was someone pops up as a broker and says, I earned a commission in this agreement. Or if, for example, an employee of Greystone would pop up and say, well, I was supposed to get deferred compensation out of this deal. That's what that provision relates to with respect to excluded liabilities. The other point the counsel seems to try to make is the election of remedies. This is just not an election of remedies case. The remedies weren't so inconsistent. The results were not contrary to prevent Fidelity from having these two causes of action. It really gets back to the argument about the one satisfaction rule. And it's clear that, as we've discussed before, that attorney's fees could be allocated in the settlement and proceed with Republican disadvantages. So if the Court doesn't have any other questions, we would urge the Court to affirm the district court's ruling. All right. Thank you, Mr. Nabel. Mr. Lahrt. Judge Englehardt, I'd like to address an issue that you raised on the attorney fee issues. They did not—Counselor Pelley asserted that they had multiple causes of action and they could allocate it where they saw fit. They didn't have multiple causes of action. They sued Greystone for a breach of contract, and they resolved that. And I think it's important for the panel to see that the attorney representing USAF in the underlying Northern District of Texas case is the owner of USAF Fidelity. So the party who decides to try and allocate his damages as attorney's fees is the party. It is USAF. And I think that goes to our point. I disagree with the interpretation of the USAF contract as allowing for attorney's fees. I don't think that's the case. I think they're using a term of losses for some indemnification that was not applicable. It was not pled in the Northern District of Texas case because I was involved in that underlying case, and I can tell this panel that the essence of the claim that USAF was advancing for attorney's fees in that case was that Texas law allows a breach of contract claim that the party whose contract was breached can recover by law, by statute, attorney's fees. Well, that is true, but there's a very particular quirk to that law. It only applies to a person or a corporation. It does not apply to a limited partnership. Greystone, the party who was in privity with USAF, is a limited partnership. That is what counsel referred to in footnote 10 of our reply brief. We've cited the court to that authority. It's a strange quirk in Texas law, but it exists nonetheless. Greystone is not statutorily liable, could not be statutorily liable for attorney's fees to USAF. So regardless of that point, Judge Engelhardt, I think it's important to note that the district court made no examination of the record evidence to determine what portion, if any, was truly allocable attorney's fees and made no effort to offset its final judgment of a money judgment against Republic with any amounts that should be credited against Republic. The second issue that I would like to discuss is I agree with Counselor Appollé. The Greystone Republic contract has no relevance to defining the obligation that Judge Duncan asked about. It has no relevance to it. That is the reason we are here because the district court defined the obligation in the USAF contract by reading the Greystone Republic contract. That's not correct. The obligation in the USAF contract, which USAF sought to enforce as a matter of contract law, has to be defined in that document. It is clearly defined. You're probably about to say this, but what, where should we look in that document? It is defined, and it's in our brief at page 7. It's section 2, basic transaction. It is at record, at the record, page 365 of the record. It clearly says that the revenue sharing, the 20% obligation that USAF seeks to now enforce, is part of the basic consideration paid for the acquisition of the assets. It is most definitely not a commission. It is most definitely not a referral fee, which is a point I'd like to close on, which I mentioned in my opening. By its very nature, a commission or a referral fee constitutes a bilateral obligation. I'm going to pay you a commission because you are going to perform future obligations and referrals to me. You are going to help generate future income for me for which I will pay you a commission or referral fee. That does not exist here. Now, what Counsel for Appellee complained of is that we got some benefit of the bargain that we didn't pay for. That is incorrect. In the purchase price that Republic paid to Greystone, they paid for the assets they acquired. And that goes back to the fundamental, the reason why when Republic found out about this mess, they sued Greystone for misrepresentation and breach because this should not have been an Exhibit H, and that was the reason for that lawsuit. So unless there are any further questions, I appreciate the Court's time. Yes. Thank you, Mr. Millock. Your case is under submission. The last case for today, Lloyd-Senecad 457 v. Flotec, LLC.